<div style="margin-left:margin">
Addison,
January,
1832.

Jewett
vs.
Nash et al.
</div>

though it would have been as well, and probably better, if the facts would warrant it, for the petitioner to state, that the land could not be divided, without great inconvenience, and pray that the same might be assigned or sold, as the Court should judge just and equitable. This petitioner asks the Court to do that which they are not authorized to do by statute, and does not ask for any thing which they can grant.

The prayer is not that the whole may be assigned to one of the parties, he paying such sum to the other as the commissioners shall judge just and equitable ; but that the interest of the petitioner alone might be assigned to one of the other tenants. The further prayer is, not for a sale of the whole premises, as the statute requires,but that the Court would order the petitioner's share and interest in the premises to be sold. This he might sell without the aid or order of the Court.

The petition is not in conformity to the statute, and the judgement of the Court is, that the petition is insufficient, and must be dismissed, and the petitionees recover their cost.

*Doolittle,* for petitioner.

*Bates,* for petitionees.

———～～～⊚～～———

<div style="margin-left:margin">
Addison,
January,
1832.
</div>

## Nath'l Gibson *vs.* Horatio Seymour and Luke Hale.

A deed absolute on the face of it, if intended as a security to indemnify the grantee for becoming bail for the grantor, or for an existing debt, is not on that account void, though the design of the parties does not appear upon the deed, nor by any evidence in writing.

This was *ejectment* for 17 acres of land in Salisbury. Plea, *not guilty.** The plaintiff claimed title by a deed from Jacob Bartholomew to himself, dated August 7, 1820, conveying a house and lot in Salisbury village, and another tract of 41 acres, which included the 17 acres demanded. The defendants claimed title under the levy of two executions upon the said 41 acres, in favor of the defendant,*Seymour*,against Bartholomew,made June 23, 1823. No objection was made to the validity of those levies.

In order to show the deed to the plaintiff to be fraudulent as against the levy of the executions, the defendants introduced evidence tending to show, that the respective debts on which the executions were founded existed previously to the execution of said deed ; and also evidence tending to show, that at the time of executing said deed, Bartholomew was confined in jail at Middle-

. * See the report of a previous trial of this cause in 3 *Vt. Rep.* 565.

Addison,
January,
1832.

Gibson
vs.
Seymour et al.

bury, on an execution in favor of one Hall; that no price was agreed on, or talked of, for the land conveyed by said deed, and that no property then passed as a consideration therefor; that Bartholomew at the same time executed to the plaintiff a written assignment of a patent right for making and vending balances. The defendant also gave in evidence two other deeds from Bartholomew to the plaintiff, one dated February 8, 1821, and the other dated October 30, 1821, with evidence tending to show, that in neither instance was any price agreed on, or property passed, as a consideration for the land conveyed; and that after said assignment Bartholomew continued the business of making balances; most of those made, for the first one or two years, going into the hands of the plaintiff.

In answer to this showing, the plaintiff introduced evidence tending to prove, that the premises contained in the first deed from Bartholomew to himself were incumbered with mortgages to a large amount; that the patent was suspected to be an infringement upon a patent previously granted to one Dearborn, and that the right of Bartholomew was not of much value; that at the time of receiving said deed and assignment, the plaintiff executed with and for said Bartholomew a jail bond on the execution in favor of Hall, and that Bartholomew was then indebted to the plaintiff in about the sum of $300; that the design of the parties in said conveyance, as well as in the assignment, was to furnish the plaintiff with collateral security for any liabilities which he might incur upon said jail bond, and for any sums which Bartholomew then owed him; (there was not however any written evidence of this purpose in relation to the deed;) that it was understood between the plaintiff and Bartholomew, that the former should further assist the latter to enable him to pay off the mortgages, and to extricate himself from other debts and embarrassments. And the plaintiff produced evidence tending to show, that he continued for some time to assist Bartholomew, by supplying him with stock for the manufacturing of balances, and by paying some debts of his, and received from him balances to a considerable amount, and applied the same either in paying off said mortgages, or to the credit of Bartholomew in account; and that the design of the parties in the two conveyances taken by the plaintiff in February and October, 1821, was to furnish the plaintiff with further collateral security for the debts and liabilities aforesaid, and for further advances and assistance. There was not however any written evidence of this design. It was further in evidence from one

ADDISON,
January,
1832.

Gibson
vs.
Seymour et al.

witness, that the plaintiff prepared the two last conveyances be-
fore calling on Bartholomew in relation to the business; and that
on one or both occasions, he suggested to Bartholomew the ex-
posure of the land to attachment at the suit of another creditor
mentioned; but at the same time avowing his object to obtain
security.  The plaintiff also produced evidence tending to show,
that in order to redeem the premises, conveyed by the first deed,
from the mortgages, the plaintiff had paid to one Reed and to one
Hale about $1500.  Most of which however was paid in balances
received of Bartholomew, as before mentioned; the last payment
being made in 1823.  The plaintiff also proved, that Bartholo-
mew having left the liberties of the jail under the supposed pro-
tection of our acts of suspension, the jail bond was put in suit, and
judgement obtained thereon—That Bartholomew, being commit-
ted on the jail bond execution, was in 1828 liberated by taking
the poor debtors' oath : and it was admitted that the plaintiff was
therefore compelled to pay and did pay the amount of said debt,
being over $200.  The plaintiff also produced evidence tending
to show, that aside from the extinguishment of said mortgages, and
the payment of the jail bond execution, Bartholomew still remained
indebted to him upon the dealings and transactions aforesaid to a
considerable amount.  It was also in evidence, that the plaintiff
brought an action of ejectment against Bartholomew for a part or
all of the premises described in the deeds before mentioned; and
that a writ of possession in favor of the plaintiff was executed in
February, 1824.  It also appeared in evidence, that after the ex-
ecution of said first deed, and until about the year 1824, Bar-
tholomew remained in possession of said tract of 41 acres, and
had always continued to occupy the house and lot in Salisbury
village; and whether he paid rent to the plaintiff, did not appear.
It appeared that the defendant, *Seymour*, took possession of the
41 acres in 1825, and had continued in possession ever since—the
defendant, *Hale*, being his tenant.

The court charged the jury, in substance, as follows :—That
Bartholomew was once the owner of the land sued for, and the
general question was, which of these parties had acquired Bar-
tholomew's title ?  The plaintiff claimed to have acquired it by
Bartholomew's deed, dated August 7th, 1820.  The defendant,
*Seymour*, claimed to have acquired it by the levy of his execu-
tions against Bartholomew, on the 23rd of June, 1823; that both
of these conveyances were effectual as against Bartholomew;
and, as between these parties, whether the deed should prevail

over the levies depended entirely on the question, whether the deed was liable to be impeached for fraud, either in fact or law—That to be valid and operative as against the creditors of Bartholomew, it must appear to have been given upon an adequate and valuable consideration, and to have been executed in good faith, for an honest and legal purpose—That considered as an absolute conveyance, it would not be available, but, in construction of law, would be fraudulent, as against the defendant, *Seymour*, a creditor of Bartholomew, for want of any sufficient consideration actually paid for the land. But if it was intended by the parties not as an absolute conveyance, but as a security or mortgage to the plaintiff, for the debt which Bartholomew then owed him, and for the liability which the plaintiff might incur by executing the jail bond, that object constituted a sufficient consideration, and the deed was not rendered void by construction of law, though the design of the parties did not appear upon the deed, nor by any evidence in writing. Yet, that the form of the conveyance, while it turned out that no consideration was in fact paid at the time, was evidence of fraud, which ought to avoid the deed, unless a satisfactory explanation appeared, and the purpose of the parties was shown to have been fair and legal—That in order to ascertain the intentions of the parties at the time, the jury were at liberty to consider all these after transactions which were in evidence, and allow them to influence the question, so far as they tended to show a subsisting and fixed design between the plaintiff and Bartholomew, running back to the execution of this deed, in relation to Bartholomew's property ; and if upon all the evidence they should find, that the only object and design of the parties, in the said conveyance of August 7th, 1820, was to furnish the plaintiff with security for Bartholomew's debt, and for signing the jail bond, then their verdict should be for the plaintiff ; but if they found that the parties intended to deceive, hinder or defraud other creditors of Bartholomew, by means of the form of conveyance which they adopted, without any defeasance, or evidence in writing to show it a mortgage, then their verdict should be for the defendant.

The jury returned a verdict for the plaintiff. The defendants filed exceptions to the charge of the court ; whereupon the cause was brought up to this Court.

WILLIAMS, J., delivered the opinion of the Court. The jury have found, that the deed under which plaintiff claims was not

fraudulent. The plaintiff has the older title, and must, therefore, recover, unless from the facts stated the jury should have been instructed that the deed was fraudulent in law. We cannot see any facts in the case which would have warranted the court in giving such instructions to the jury, or which required a charge in any way different from the one given. It appears, that the plaintiff executed a jail bond for Bartholomew, the grantor; and that Bartholomew was indebted to him, and probably the deed was executed upon these considerations alone. But if there was a further consideration, viz. an engagement by the plaintiff to assist Bartholomew in extinguishing the incumbrances, which were then on the land, and also in extricating himself from other debts and embarrassments, the deed would not on that account be void, if there was no fraudulent intent. It is conceded by the defendant's council that an absolute deed, intended merely as security for future advances, is inoperative as against the creditors of the grantor. This court have decided in the case of *Williams and Putnam* vs. *Parish et al.* in Orange county, March, 1831, that a deed absolute on the face, though intended as a security to indemnify the grantee for becoming bail for the grantor, is not, on that account, void. These principles are decisive of the present case. There was an indebtedness from Bartholomew to the plaintiff, and the plaintiff incurred a liability on signing the jail bond, for which he had an undoubted right to an indemnity. These constituted a good consideration for the deed, and entitled the plaintiff to a verdict. If the plaintiff cannot hold the land, as a security for any further sum due to him from Bartholomew, this can be decided when the defendant asks to redeem the mortgage. Then all the claims, which the plaintiff has, and which are legal incumbrances on the land as against the defendants, can be ascertained.

It may be remarked, however, that an agreement between the plaintiff and Bartholomew, that the plaintiff should pay the incumbrances, which were then on the land, and hold the same as surety therefor, cannot be liable to any objection. Without any such agreement, the plaintiff, if he paid off the incumbrances, to avail himself of the benefit of his deed from Bartholomew, would have had an equitable lien on the land until he was reimbursed in the sums he paid therefor.

The judgement of the county court is affirmed.

*Starr & Judge Phelps*, for plaintiff.

*Seymour*, for defendant.